UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **TURBOVEN COMPANY**, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>**BRADLEY T. SMITH, in his official capacity as Director of the U.S. Department of the Treasury Office of Foreign Assets Control**, *et al.*,<br><br>Defendants. | Case No. 1:24-cv-03616 (TNM) |

**MEMORANDUM OPINION**

Turboven Company incorporated two subsidiaries to run power plants in Venezuela. The Venezuelan government later took control of those subsidiaries and forced them to power a government-run crypto mining facility. Turboven, its officers, and its owner now fear that the Treasury Department's Office of Foreign Assets Control ("OFAC") might place them on the Specially Designated Nationals ("SDN") list and sanction them for doing business with the Venezuelan government. They sue OFAC and its Director, asking the Court to declare that they are not violating sanctions law and to enjoin OFAC from placing them on the SDN list. Because the Court lacks jurisdiction to entertain this suit, it will dismiss it.

I.

Turboven Company started in the Cayman Islands as a joint venture between U.S.[1] and Venezuelan energy companies. Compl., ECF No. 1, ¶ 12. Looking to provide power to the Venezuelan cities of Maracay and Cagua, Turboven incorporated a subsidiary in each city.

---

[1] The U.S. company was later bought out by Gregorian International, incorporated in Barbados. Compl., ECF No. 1, ¶¶ 7, 12, 19.

*Id.* ¶ 13. For more than two decades, these subsidiaries operated as "private, independent power producers in Venezuela," serving private clients through a private energy grid. *Id.* ¶¶ 13, 15, 20. One of those clients was a firm named MCELD, which used Turboven-generated power "to engage in private crypto mining." *Id.* ¶ 21.

According to its Complaint, Turboven's trouble with the Venezuelan government began in October 2023, when government agencies raided MCELD's facilities and halted its mining operations. *Id.* ¶ 22. The raid prompted Turboven to suspend electrical service to MCELD's facilities "for commercial and safety reasons." *Id.* ¶ 24. The next month, government agents broke into Turboven Maracay's facilities, stole information on Turboven's customers and operations, locked all personnel in the facilities, and presented Turboven with a court order seizing control of MCELD. *Id.* ¶¶ 25–27. Under duress, Turboven agreed to restore power to MCELD's facilities. *Id.* ¶ 28.

But the saga was far from over. In late 2023, Venezuela's crypto agency notified Turboven that it intended to operate MCELD under the company's existing contract with Turboven Cagua. *Id.* ¶ 30. In response, Turboven again suspended service to MCELD. *Id.* ¶ 31. This launched a political drama that culminated in the Venezuelan government forcibly taking over Turboven Maracay and Cagua and operating the power plants under Turboven's guise. *Id.* ¶¶ 32–46.

Although Turboven no longer controls Turboven Maracay or Cagua, it is concerned that OFAC might find it liable for the Venezuelan government's actions and place it on the SDN list. *Id.* ¶ 53. The company, its officers, and its owner Gregorian International—collectively, Turboven—ask the Court to declare that "none of [them] are participating in, nor are they in any way involved with, the illegal activities" of Turboven Maracay and Cagua under the Venezuelan

government's control.  *Id.* at 14–15.  Turboven also seeks an injunction "[p]rohibiting Defendants from placing Plaintiffs Turboven and Gregorian on OFAC's SDN list."  *Id.* at 15.  OFAC moves to dismiss Turboven's Complaint for lack of subject matter jurisdiction, and that motion is now ripe.  *See* Mot. to Dismiss, ECF No. 21; Resp. to Mot. to Dismiss, ECF No. 23; Reply, ECF No. 25.

## II.

"Federal courts are courts of limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Turboven "bears the burden of invoking the court's subject matter jurisdiction, including establishing the elements of standing."  *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015).  In evaluating subject matter jurisdiction, the Court may consider materials outside the pleadings but must "accept all of the factual allegations in the complaint as true."  *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253–54 (D.C. Cir. 2005) (cleaned up).  If the Court determines that it lacks subject matter jurisdiction, it must dismiss the case.  Fed. R. Civ. P. 12(h)(3).

## III.

Turboven's suit is a jurisdictional nonstarter for two reasons.  First, no statute grants the Court subject matter jurisdiction over Turboven's claims.  And second, Turboven lacks standing to bring those claims, in any event.  The Court addresses each jurisdictional defect in turn.

### A.

To invoke the Court's subject matter jurisdiction, Turboven must identify a statute that confers it.  *See Kokkonen*, 511 U.S. at 377 (stating that federal courts "possess only that power authorized by Constitution and statute").  Turboven proffers three candidates: the Mandamus

3

Act, 28 U.S.C. § 1361; the Declaratory Judgment Act, 28 U.S.C. § 2201; and the federal question statute, 28 U.S.C. § 1331. Compl. ¶ 10. None does the trick.

Start with the Mandamus Act—which grants district courts jurisdiction over "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. The Court may award mandamus relief only if "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to [the] plaintiff." *Muthana v. Pompeo*, 985 F.3d 893, 910 (D.C. Cir. 2021). "These three threshold requirements are jurisdictional; unless all are met, [the] [C]ourt must dismiss the case for lack of jurisdiction." *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016); *see also Lovitky v. Trump*, 949 F.3d 753, 759 (D.C. Cir. 2020) ("[M]andamus jurisdiction under § 1361 merges with the merits." (cleaned up)).

Turboven falls short of that standard. It asks the Court to bar OFAC from placing Turboven on the SDN list. Compl. at 15. But far from alleging that OFAC has a "clear duty to act," Turboven requests that OFAC refrain from action authorized by statute and executive order. *See* 50 U.S.C. § 1702(a)(1)(B) (authorizing the President, in declared national emergencies, to "prevent or prohibit [ ] any acquisition, holding, withholding, use, transfer, withdrawal, transportation, importation or exportation of, or dealing in, or exercising any right, power, or privilege with respect to, or transactions involving, any property in which any foreign country or a national thereof has any interest by any person, or with respect to any property, subject to the jurisdiction of the United States"); *see also* Exec. Order No. 13,827, 83 Fed. Reg. 12,469, 12,469 (Mar. 19, 2018) (prohibiting U.S. persons and entities from engaging in "transactions related to . . . any digital currency" issued by "any person owned or controlled by . . . the Government of

Venezuela" and authorizing "[t]he Secretary of the Treasury, in consultation with the Secretary of State, . . . to employ all powers granted to the President by [the International Emergency Economic Powers Act ("IEEPA")] as may be necessary to implement this order"); *id.* (authorizing the Treasury Secretary to "redelegate any of these functions to other officers and executive departments and agencies of the United States Government."). These authorities evince OFAC's ample discretion over whom it places on the SDN list. *See* 31 C.F.R. § 501.807 (outlining the process for seeking "administrative reconsideration" of one's placement on the SDN list); *see also Karadzic v. Gacki*, 602 F. Supp. 3d 103, 115 (D.D.C. 2022) ("Congress granted wide latitude over sanctions to [OFAC]; it is not for the courts to say otherwise.").

That discretion defeats Turboven's quest for mandamus relief—which "lies only to compel ministerial, as opposed to discretionary, duties." *Leopold v. Manger*, 102 F.4th 491, 497 (D.C. Cir. 2024); *see also Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63 (2004) ("The mandamus remedy was normally limited to . . . the ordering of a precise, definite act about which an official had no discretion whatever." (cleaned up)); *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 170 (1803) (stating that mandamus is unavailable where "executive discretion is to be exercised"). In short, this is not the stuff of which mandamus suits are made, and nothing in the Complaint suggests otherwise. The Court thus has no mandamus jurisdiction. *Am. Hosp. Ass'n*, 812 F.3d at 189.

Next, "[i]t is a well-established rule that the Declaratory Judgment Act is not an independent source of federal jurisdiction." *Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011) (cleaned up); *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72 (1950). The Act "presupposes the existence of a judicially remediable right" and thus "will not fill a gap in

5

subject matter jurisdiction." *Lovitky*, 949 F.3d at 758–59 (cleaned up); 28 U.S.C. § 2201(a). Turboven must find jurisdiction elsewhere.

The federal question statute likewise cannot fill Turboven's jurisdictional hole. The Court has jurisdiction under 28 U.S.C. § 1331 when "federal law creates the cause of action asserted" or when a federal issue lies at the heart of a state-law claim. *D.C. Ass'n of Chartered Pub. Sch. v. District of Columbia*, 930 F.3d 487, 491 (D.C. Cir. 2019) (quoting *Gunn v. Minton*, 568 U.S. 251, 257 (2013)). Turboven points to no federal statute or constitutional provision other than the Mandamus Act. This means that its "request for an injunction based on the general federal question statute is essentially a request for a writ of mandamus." *Lovitky*, 949 F.3d at 759. Without a viable mandamus claim or any other cause of action, "the federal question statute alone [cannot] serve as the source of federal jurisdiction." *Id*.

Turboven has little to say in response. In fact, it does not address OFAC's jurisdictional arguments, effectively conceding that the Court lacks jurisdiction. *See* Resp. at 6–9; *Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428 (D.C. Cir. 2014) ("[I]f a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded."). Turboven instead asks the Court to construe the Complaint "to articulate a claim under the [Administrative Procedure Act ("APA")] for OFAC's violations of the [statutory] framework"—and alternatively asks to amend its Complaint. Resp. at 6–7.

But Turboven cannot move to amend its Complaint via "a bare request in an opposition to a motion to dismiss." *Rollins v. Wackenhut Servs. Inc.*, 703 F.3d 122, 130 (D.C. Cir. 2012) (cleaned up). What Turboven could have done is amend its Complaint as a matter of course after receiving OFAC's Motion to Dismiss. *See* Fed. R. Civ. P. 15(a)(1)(B). Turboven also could have moved to amend its Complaint through the procedure outlined in this Court's local rules,

which would have required attaching "a copy of the proposed pleading as amended." LCvR 15.1. Because Turboven's request to amend "neither included a proposed amended complaint nor otherwise indicated [it] would be able to plead sufficient facts to state a plausible [APA] claim," the Court need not humor it. *Rollins*, 703 F.3d at 130–31. All told, Turboven has provided no statute that would bestow jurisdiction over this suit.

### B.

While the absence of a statutory grant of jurisdiction dooms Turboven's case, the lack of standing puts a nail in the coffin. *See Am. Libr. Ass'n v. FCC*, 401 F.3d 489, 492 (D.C. Cir. 2005) ("Article III standing is a prerequisite to federal court jurisdiction . . . ."). To establish standing, Turboven "must show (i) that [it] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by [OFAC]; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Here, "where [Turboven] seeks prospective declaratory and injunctive relief, [it] must establish an ongoing or future injury that is certainly impending . . . ." *Williams v. Lew*, 819 F.3d 466, 472 (D.C. Cir. 2016) (cleaned up); *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ("[W]e have repeatedly reiterated that threatened injury must be *certainly impending* to constitute injury in fact, and that allegations of *possible* future injury are not sufficient." (cleaned up)).

Turboven does not clear that bar. It fears that OFAC will place it on the SDN list because Turboven's subsidiaries have been hijacked by the Venezuelan government. Compl. ¶ 53; Resp. at 7–8. It seeks declaratory and injunctive relief to avoid "being found in violation of U.S. law" and "being placed on the SDN list." Compl. ¶¶ 58, 59, 63. The problem for Turboven is that it has not shown that any OFAC action—let alone placing Turboven on the SDN list—is

"certainly impending." *See Williams*, 819 F.3d at 472; *Clapper*, 568 U.S. at 409. Indeed, Turboven undermines its own case by emphasizing the "opacity of the procedures and investigations undertaken by OFAC prior to listing an entity [on] the SDN list." *See* Compl. ¶ 54. That failure to show a "certainly impending" injury is fatal to Turboven's bid for standing. *See Williams*, 819 F.3d at 472.[2]

## IV.

The Court lacks jurisdiction over Turboven's suit in at least two ways. It therefore must dismiss it without prejudice. Fed. R. Civ. P. 12(h)(3). A separate Order will follow.

Dated: December 11, 2025

TREVOR N. McFADDEN
United States District Judge

---

[2] OFAC also argues that there is no jurisdiction because sovereign immunity bars Turboven's suit. *See* Mot. to Dismiss at 8–10. The Court does not address that argument given the other two jurisdictional defects. *Ass'n of Am. Physicians & Surgeons, Inc. v. Schiff*, 23 F.4th 1028, 1032 (D.C. Cir. 2022) (stating that "the court may take up jurisdictional issues in any order, and need not reach other grounds where one is dispositive" (cleaned up)).